UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEANANN VERMEESCH,                          Case No. 14-10619

          Plaintiff,                    Stephen J. Murphy, III
v.                                          United States District Judge

COMMISSIONER OF SOCIAL SECURITY,            Michael Hluchaniuk
                                            United States Magistrate Judge
          Defendant.
_____/


**REPORT AND RECOMMENDATION**
**CROSS-MOTION FOR SUMMARY JUDGMENT (Dkt. 14, 16)**


I.    **PROCEDURAL HISTORY**

    A.    Proceedings in this Court

On February 10, 2014, plaintiff filed the instant suit seeking judicial review

of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

Lawrence P. Zatkoff[1] referred this matter to the undersigned for the purpose of

reviewing the Commissioner's decision denying plaintiff's claims for period of

_____

[1] Pursuant to Administrative Order 15-AO-015, this matter was reassigned to The
Honorable Stephen J. Murphy, III on February 12, 2015.

1

disability, disability insurance and supplemental security income benefits.  (Dkt. 3).  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 12, 14).  Plaintiff also filed a reply brief in support of her motion for summary judgment.  (Dkt. 18). These motions are now ready for report and recommendation.

     B.    <u>Administrative Proceedings</u>

Plaintiff filed the instant claim for disability insurance and supplemental security income benefits on January 11, 2012, alleging disability beginning May 15, 2011.  (Dkt. 14, Pg ID 471).  Plaintiff's claims were initially denied by the Commissioner on March 28, 2012.  (Dkt. 10-2, Pg ID 47).  Plaintiff requested a hearing and on October 10, 2012, plaintiff testified before Administrative Law Judge ("ALJ") Mary Ann Poulose who considered the case de novo.  (Dkt. 10-2, Pg ID 66-93).  In a decision dated November 8, 2012, the ALJ found that plaintiff was not disabled. (Dkt. 10-2, Pg ID 47-62).  Plaintiff requested a review of this decision, and the ALJ's decision became the final decision of the Commissioner when the Appeals Council, on January 7, 2014, denied plaintiff's request for review.  (Dkt. 10-2, Pg ID 32-34); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, that the findings of the Commissioner be **AFFIRMED**.

## II.      FACTUAL BACKGROUND

### A.      ALJ Findings

Plaintiff was born in 1967 and was 44 years old on the alleged disability onset date.  (Dkt. 10-2, Pg ID 60).  Plaintiff had past relevant work as a data entry clerk and a secretary.  *Id*.  The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that plaintiff had not engaged in substantial gainful activity since May 15, 2011, the alleged on-set date.  (Dkt. 10-2, Pg ID 49).  At step two, the ALJ found that plaintiff had the following severe impairments: status post lumbar laminectomies, venous insufficiency, obstructive sleep apnea, fibromyalgia, migraines, obesity, mild carpal tunnel syndrome, cervical degenerative disc disease, and generalized anxiety disorder/depression. *Id*.  Plaintiff's irritable bowel syndrome, hyperlipidemia with fatty liver infiltration and mild knee osteoarthritis were deemed medically determinable impairments that were not severe.  (Dkt. 10-2, PgID 50).  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the

3

listings in the regulations.  (Dkt. 10-2, PgID 50-51).

The ALJ determined that plaintiff had the residual functional capacity

(RFC) to perform light work, except:

> she can sit for up to six hours in an eight-hour day;
> stand/walk for up to six hours in an eight-hour day; lift
> up to eight pounds; occasionally climb, crouch, crawl,
> stoop, kneel; frequently, but not constantly, use her
> upper extremities; she is limited to unskilled work
> activity; and she must avoid exposure to occupational
> hazards, such as moving machinery, unprotected heights,
> and commercial driving.

(Dkt. 10-2, Pg ID 53).  At Step Four, the ALJ found that plaintiff could not

perform her past relevant work as a data entry clerk.  (Dkt. 10-2, Pg ID 60).

However, the ALJ determined that, considering plaintiff's age, education,

experience, and RFC, there were jobs that exist in sufficient numbers that plaintiff

can perform and therefore, plaintiff had not been under a disability from the

alleged onset date through the date of the decision.  (Dkt. 10-2, Pg ID 60-61).

B.    Plaintiff's Claims of Error

Plaintiff argues that the ALJ's decision of non-disability is not supported by

substantial evidence because the testimony provided by the Vocational Expert

(VE) was based upon inaccurately posed hypothetical questions that failed to

describe plaintiff's mental and physical impairments.  (Dkt. 12, PgID 476).

4

Plaintiff concedes that substantial evidence may be produced through testimony of the VE in response to hypothetical questions, but only if those hypothetical questions accurately portray the claimant's physical and mental impairments. *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).

Plaintiff argues that the ALJ made a reversible error by failing to address plaintiff's severe impairments of generalized anxiety disorder and depression with non-exertional limitations in the RFC. (Dkt. 12, PgID 477-478). Plaintiff indicates that the Medical Source Statement completed by her primary care physician, Mark Gerold, M.D., states that emotional factors contribute to her symptoms, her functional limitations, and her ability to handle ordinary work stress. (Dkt. 12, PgID 478; Dkt. 10-8, PgID 425-426).

Plaintiff contends an ALJ must consider work related mental activities such as the ability to understand, carry out and remember instructions, make work-related judgments, respond appropriately to supervision, co-workers and work situations and deal with changes in the routine work setting, SSR 96-8p; the ALJ's failure to include any of these activities in the hypothetical posed to the VE rendered it, and the VE's testimony regarding jobs plaintiff could perform based upon that testimony, defective. *Id.*

5

Plaintiff further argues that the ALJ's RFC is likewise deficient because it is devoid of any restriction as to speed or pace of work despite the ALJ's finding that plaintiff has moderate limitations related to concentration, persistence and pace. (Dkt. 12, PgID 478-479; Dkt. 10-2, PgID 52).  Plaintiff asserts that the limitation to unskilled work is not adequate to address plaintiff's moderate restriction in her concentration, persistence and pace capabilities.  *See Edwards v. Barnhardt*, 383 F.Supp.2d 920, 930-31 (E.D.Mich. 2005).

Plaintiff also contends that substantial evidence does not support the findings of the Commissioner because the RFC fails to accurately portray the physical limitations imposed by plaintiff's carpel tunnel syndrome, migraine headaches and venous insufficiency.  (Dkt. 12, PgID 479-483).

First, plaintiff claims that the ALJ should have imposed greater restrictions for the use of her upper extremities based upon the objective findings of her neurologist, David Udehn, M.D. and plaintiff's testimony at the hearing.  (Dkt. 12, PgID 479-480).  Specifically, plaintiff cites the positive Tinel's sign and positive Phalen's sign adduced from testing conducted by Dr. Udehn, her increasing use of wrist splints to treat her carpel tunnel syndrome, as well as her testimony at the hearing that she drops things from time to time and gets shooting pains in her arms with numbness and tingling in her hands to support her argument that the ALJ

6

should have restricted plaintiff to only "occasional," and not "frequent," use of her upper extremities. Plaintiff argues that her understated upper extremity limitations renders the RFC and the hypothetical posed to the VE invalid and they cannot be relied upon as substantial evidence to support the findings of the Commissioner. (Dkt. 12, PgID 480).

Second, plaintiff asserts that the RFC's silence as to any restrictive factor to accommodate plaintiff's severe impairment of migraine headaches amounts to reversible error. (Dkt. 12, PgID 482). Plaintiff testified at hearing that she suffers at least four migraine headaches a month, that her headaches last anywhere from three to four hours to all day and cause her to vomit, or feel nauseated, even with anti-nausea medication. (Dkt. 12, PgID 481; Dkt. 10-2, PgID 85). Plaintiff's brief notes treatment with two different prescription drugs. (Dkt. 12, PgID 481). Plaintiff concludes that "substantial evidence fails to support the findings of the Commissioner when the 'severe' impairment of migraine headaches lacks any restriction within the RFC." (Dkt. 12, PgID 482).

Similarly, plaintiff argues that the absence of any restrictions related to plaintiff's severe impairment of venous insufficiency also renders the RFC deficient. Notwithstanding plaintiff's testimony that she can walk only four or five aisles at Meijer before she needs to sit down, that she has been prescribed

7

bilateral knee-high compression stockings and Dr. Gerold's opinion that she should elevate her legs for twenty minutes every three hours, the RFC provides that plaintiff may sit, stand or walk for up to six hours in an eight-hour workday. Plaintiff argues the positional limitation in the RFC is inconsistent with her severe impairment of venous insufficiency and hence this case must be remanded for further proceedings to address this inconsistency. (Dkt. 12, PgID 484).

Finally, Plaintiff contends that substantial evidence does not support the Commissioner's findings because the ALJ failed to adhere to the treating source rule, improperly discounting the opinion of plaintiff's primary care physician, Dr. Gerold. (Dkt. 12, PgID 483).

Plaintiff first challenges the ALJ's rationale for assigning Dr. Gerold's opinion little weight because it is a "check mark" form without any narrative explanation and is not supported by the objective medical evidence of record. (Dkt. 12, PgID 484). Plaintiff argues that Dr. Gerold's opinions are supported by his observations within the treatment notes and the medications he prescribed to plaintiff. Plaintiff also notes that "check mark" forms are the same format relied upon by the Commissioner. *Id.*

Plaintiff also disputes the ALJ's assertion that Dr. Gerold's opinions are not

8

consistent with the objective medical records, or even his own treatment notes.
(Dkt. 12, PgID 485).  Plaintiff notes that Dr. Gerold's findings are consistent with
radiographic imaging showing degenerative changes in the cervical spine at the
C6-C7 and C7-T1 levels.  Plaintiff also disputes the ALJ's finding that Dr.
Gerold's treatment notes do not support his opinion's notation of a positive
straight leg raising test.  *Id.*  Finally, plaintiff argues that the ALJ ignored evidence
that supports plaintiff's complaints of pain and allegations of restrictions on
sitting, standing and using her hands.  Accordingly, plaintiff urges this court to
remand this case for further proceedings to properly evaluate the treating source
opinion.  *Id.*

## C.    The Commissioner's Motion for Summary Judgment

The Commissioner contends that the RFC and the relevant hypotheticals
accurately reflected all of the limitations supported by the record.  *See Casey v.
Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Blacha v.
Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990)(hypothetical
with support from the record need not reflect claimant's unsubstantiated
complaints).  Accordingly, the Commissioner argues the ALJ properly relied on
the VE's response to those hypotheticals in determining whether plaintiff could
still perform a significant number of jobs in the economy.  *See Ealy v. Comm'r of*

9

*Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010); (Dkt. 16, PgID 508).

First, the Commissioner counters plaintiff's argument that the RFC was deficient because it failed to address plaintiff's severe impairments of generalized anxiety disorder and depression, arguing, as an initial matter, that there is no requirement that the RFC reflect limitations that uniquely correspond with each impairment identified as "severe" in step two. *See Griffeth v. Comm'r of Soc.Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Yang v. Comm'r of Soc.Sec.,* 2004 WL 1765480 at *5 (E.D.Mich. July 14, 2004).

The Commissioner also asserts that the ALJ adequately addressed plaintiff's anxiety and depression impairments in the RFC by limiting plaintiff to unskilled work.  The Commissioner cites 20 C.F.R. §404.1568(a), defining unskilled work as that which requires little or no judgment to do simple duties, and SSR 85-15, 1985 WL 56857 at *4, stating the mental demands of unskilled work include the abilities to understand, carry out and remember simple instructions, to respond appropriately to supervision, co-workers, and usual work situations, and to deal with changes in the routine work setting.  (Dkt. 16, PgID 509).  The Commissioner concludes that, given plaintiff's normal mental status examinations and the ALJ's appropriate rejection of Dr. Gerold's opinion on plaintiff's mental limitations, there was no error and the RFC was supported by substantial evidence.  *Id.*

10

The Commissioner also asserts that the RFC's restriction to unskilled work adequately addresses plaintiff's moderate limitation in her abilities for concentration, persistence and pace.  According to the Commissioner, a finding of moderate limitations in CPP does not necessarily preclude an ability to do unskilled work.  *See Zizzo v. Comm'r of Soc.Sec.*, 2013 WL 5291663 at *6 (E.D.Mich. Sept. 19, 2013).  Rather, a court must look at the record as a whole to determine if a restriction to unskilled work adequately addresses a plaintiff's moderate limitations in CPP.  *See Schalk v. Comm'r of Soc.Sec.*, 2011 WL 4406824 at *11(E.D.Mich. Aug. 30, 2011); *Latarte v. Comm'r of Soc.Sec.*, 2009 WL 1044836 at * 3 (E.D.Mich. Apr. 20, 2009); *Bohn-Morton v. Comm'r of Soc. Sec.*, 389 F.Supp.2d 804, 805-07 (E.D.Mich. 2005).

Next, the Commissioner refutes plaintiff's claim that the manipulative restrictions included in the RFC were insufficient to address plaintiff's mild carpel tunnel syndrome.  Conceding that the clinical evidence supports plaintiff's diagnosis of mild carpel tunnel syndrome, the Commissioner argues that the mere diagnosis of the impairment does not establish the condition prevents plaintiff's frequent use of her upper extremities.  *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).   The Commissioner points out that plaintiff's neurologist noted normal coordination, motor function and 5/5 grip strength in plaintiff's upper extremities.

11

(Dkt. 16, PgID 511).  Additionally, plaintiff's primary care physician, Dr. Gerold, was unable to duplicate positive Tinel's or Phalen's signs during an August 2012 examination and did not propose any manipulative restrictions in his opinion. Accordingly, the Commissioner asserts that the record does not support greater manipulative restrictions than those included in the RFC.  *Id.*

The Commissioner next addresses plaintiff's argument that the RFC was deficient in its failure to account for plaintiff's migraine headaches.  The Commissioner reiterates that a finding of an impairment to be severe at step two does not oblige the ALJ to tailor RFC restrictions to that impairment.  *See Griffeth,* 217 Fed. App'x at 429.  The Commissioner notes that Dr. Gerold did not identify migraine headaches as a pertinent ailment and hence offered no limitations related to plaintiff's migraines in his opinion.  The Commissioner thus concludes that, without evidence that the migraines impeded plaintiff's ability to work, the ALJ was not required to include migraine-related restrictions in plaintiff's RFC.  (Dkt. 16, PgID 512).

Likewise, the Commissioner controverts plaintiff's position that the ALJ erred in failing to account for her venous insufficiency in finding she could meet the exertional requirements of light work.  *Id*.  The Commissioner points out that plaintiff relies on her own testimony and Dr. Gerold's opinion that she was

12

required to elevate her legs periodically to support her argument that RFC was deficient in this regard. The Commissioner argues that the ALJ was justified in omitting further restrictions for this impairment because she was not obligated to accept testimony she found less than fully credible. *See Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994). Additionally, the Commissioner contends, the ALJ appropriately discounted the opinion of Dr. Gerold that plaintiff would have to lie down and elevate her legs periodically because that opinion was neither supported by, nor consistent with, other substantial evidence in the record, including his own treatment notes. *See Bogle v. Sullivan*, 998 F.2d 342, 345, 347-48 (6th Cir. 1993); (Dkt. 16, PgID 513).

Finally, the Commissioner argues that the ALJ properly discounted plaintiff's treating physician, Dr. Gerold's opinions that she would be off-task and miss work regularly, needs to lie down, cannot twist at the waist and needs to elevate her legs throughout the day. *Id*.

The Commissioner notes that a treating physician's opinion is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory findings and is not inconsistent with other substantial evidence in the record. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The Commissioner further points out that if the treater's opinion does not receive

13

controlling weight, the ALJ must determine how much weight to assign it by considering the following factors: the length, nature and extent of the treatment relationship; the opinion's supportability and consistency with the record as a whole; the treating source's area of specialization; and any other relevant factors. *Id.*

The Commissioner argues that the ALJ appropriately discounted Dr. Gerold's opinions consistent with the above-cited framework because the opinion was unsupported, inconsistent with the objective medical evidence, he had a brief treating relationship with plaintiff and his treatment notes do not reflect any mention of anxiety/depression. (Dkt. 16, PgID 514).

Specifically, the Commissioner refutes plaintiff's claim that Dr. Gerold's opinion regarding plaintiff's need to elevate her legs follows logically from his clinical observations of leg swelling, noting that Dr. Gerold did not check the box indicating swelling of extremities on the Medical Source Statement. (Dkt. 10-8, PgID 425-426). The Commissioner further points out that several objective findings reported in the Medical Source Statement–e.g., positive straight-leg raising, limited range of motion, abnormal posture–are not reflected in his examination notes or those of his predecessor, Bilal Bazzi, M.D. (Dkt. 16, PgID 515).

14

The Commissioner concludes that it does not dispute that Plaintiff has significant impairments, but rather that those impairments do not cause functional limitations severe enough to preclude work. The Commissioner argues that plaintiff has not met her burden showing through competent evidence that a more restrictive RFC was warranted. Accordingly, the Commissioner urges this court to affirm its final decision because it is free from legal error and supported by the substantial evidence of record.

D.    Plaintiff's Reply

In reply, plaintiff asserts that in arguing that the restriction to unskilled work accommodates plaintiff's severe impairments of generalized anxiety disorder and depression, the Commissioner conflates work skills with work-related mental abilities. Plaintiff also argues that failing to incorporate severe impairments within a hypothetical to the VE and RFC is reversible error. *See Howard v. Comm'r of Soc.Sec.*, 276 F.3d 235, 241 (6th Cir. 2002); *Eisler v. Barnhardt*, 344 F.Supp.2d 1019 (E.D.Mich. 2004); *Walker v. Barnhardt*, 258 F.Supp.2d 693, 701 (E.D.Mich. 2003). Plaintiff thus concludes that the ALJ's failure to account for her mental impairments in the hypothetical is fatal to the VE's testimony and the ALJ's reliance on that testimony. (Dkt. 18, PgID 521).

Similarly, plaintiff argues in reply that her moderate limitations in concentration, persistence and pace are not adequately accommodated by the ALJ's RFC restriction to unskilled work. Plaintiff argues that a person with mental impairments limited to unskilled work can still have problems with quotas, staying awake, or working at a consistent pace and cites case law finding restrictions to unskilled work insufficient to capture moderate limitations in CPP. *See Brown v. Comm'r of Soc.Sec.*, 672 F.Supp.2d 794, 797 (E.D.Mich. 2009); *Edwards v. Barnhardt*, 383 F.Supp.2d 920, 930-31 (E.D.Mich. 2005); *Cheeks v. Comm'r of Soc.Sec.*, 690 F.Supp.2d 592, 602 (E.D.Mich. 2009).

Plaintiff argues that her mild carpel tunnel syndrome requires her to wear wrist splints throughout the day and this requirement would prevent her from frequently using her upper extremities. *See* SSR 83-10. Plaintiff also counters the Commissioner's argument that Dr. Gerold's opinion did not propose any manipulative restrictions by noting that Dr. Gerold listed carpel tunnel syndrome symptoms of tenderness of the forearms in his opinion. (Dkt. 18, PgID 522).

Plaintiff acknowledges Dr. Gerold's omission of restrictions related to or any discussion of plaintiff's migraines in the Medical Source Statement but argues that his prescription of Imitrex, Amerge and Zofran to address plaintiff's headaches and related nausea is sufficient to establish that plaintiff was

16

symptomatic and restricted in her ability to work by the migraines.  (Dkt. 18, PgID 523).

Plaintiff also argues that plaintiff's credibility is immaterial to the determination of whether the RFC must include a restriction corresponding to plaintiff's severe impairment of venous insufficiency.  *Id.*  Plaintiff argues that by virtue of finding the condition a severe impairment at step two, the ALJ was required to address it in the RFC and the VE hypothetical.  (Dkt. 18, PgID 524).

Finally, plaintiff refutes that the ALJ properly discounted Dr. Gerold's opinions because they were in the form of a check mark without a narrative explanation.  Plaintiff argues that Dr. Gerold gave a narrative explanation regarding problems with leg swelling which justify his opinion that plaintiff must elevate her legs throughout the day.  *Id*.  Plaintiff also argues that the prescription of drugs for her migraine headaches serves as objective medical evidence in support of Dr. Gerold's opinions.  Plaintiff reiterates that Dr. Gerold's opinions are consistent with her status post lumbar laminectomies and her most current x-rays and with his notation of a positive straight leg raising test in the Medical Source Statement.

Plaintiff urges the court to remand this case for further proceedings to

17

correct errors associated with the RFC, to formulate a hypothetical that accurately portrays plaintiff's physical and mental impairments and to follow the regulations on the treating source opinion. *Id.*

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the

record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant."  *Rogers v.*

*Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.*

*Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may ... consider the credibility of a claimant

when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502

F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the

claimant are to be given great weight, particularly since the ALJ is charged with

observing the claimant's demeanor and credibility.") (quotation marks omitted);

*Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence.").  "However, the ALJ is not free to make

credibility determinations based solely upon an 'intangible or intuitive notion

about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of*

20

*Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.   <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are

21

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.

> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.

> Step Three:  If plaintiff is not performing substantial

gainful activity, has a severe impairment that is expected
to last for at least twelve months, and the severe
impairment meets or equals one of the impairments listed
in the regulations, the claimant is conclusively presumed
to be disabled regardless of age, education or work
experience.

Step Four:  If the claimant is able to perform his or her
past relevant work, benefits are denied without further
analysis.

Step Five: Even if the claimant is unable to perform his
or her past relevant work, if other work exists in the
national economy that plaintiff can perform, in view of
his or her age, education, and work experience, benefits
are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

   "Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

23

At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

    C.    <u>Analysis</u>

        1.    <u>Treating Source Opinion</u>

In the view of the undersigned, the ALJ's decision to assign little or no weight to the opinions of Dr. Gerold is supported by substantial evidence.

The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). The Commissioner is required to provide "good

24

reasons" for discounting the weight given to a treating-source opinion. These

reasons must be supported by the evidence in the case record, and must be

sufficiently specific to make clear to any subsequent reviewers the weight the

adjudicator gave to the treating source's medical opinion and the reasons for that

weight.  *Gayheart v. Comm'r of Soc.Sec.,* 710 F.3d 365, 376 (6th Cir.

2013)(citations omitted).

> This requirement is not simply a formality; it is to safeguard the claimant's procedural rights. It is intended "to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that [ ] he is not. Significantly, the requirement safeguards a reviewing court's time, as it "permits meaningful" and efficient "review of the ALJ's application of the [treating physician] rule."

 *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir.2011) (citations omitted).   "This

circuit 'has made clear that [it] do[es] not hesitate to remand when the

Commissioner has not provided good reasons for the weight given to a treating

physician's opinion.'" *Gayheart,* 710 F.3d at 380 (quoting *Cole*, 661 F. 3d at 939).

 Even if an ALJ determines that plaintiff's treating physician's opinions

should not be given controlling weight despite the medical evidence in support,

"the ALJ must still determine how much weight is appropriate by considering a

number of factors, including the length of the treatment relationship,

25

supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Allen v. Comm'r of Soc. Sec.*, No. 12-15097, 2013 WL 5676254, at *13 (E.D. Mich. Sept. 13, 2013)(citing *Blakley v.Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)).

"The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 404.1527(c)(3). "Moreover, when the physician is a specialist with respect to the medical condition at issue, . . . her opinion is given more weight than that of a non-specialist." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011).

Because the Commissioner is responsible for determining whether a claimant meets the statutory definition of disability, the ALJ "will not give any special significance to the source of an opinion[, including treating sources], on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section[,]" i.e., whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, residual functional capacity, and application of vocational factors. 20 C.F.R. § 404.1527(d)(3).  A "[d]octor's notation in his notes of a claimed symptom or subjective complaint from the patient is not

26

medical evidence; it is the 'opposite of objective medical evidence.' [Thus,] [a]n

ALJ is not required to accept the statement as true or to accept as true a

dissension's opinion based on those assertions." *Masters v. Astrue*, 818 F. Supp.

2d 1054, 1067 (N.D. Ill. 2011). "Otherwise, the hearing would be a useless

exercise." *Id.*

Here the ALJ articulated the necessary "good reasons" for affording Dr.

Gerold's opinions less than controlling weight by citing the absence of clinical

support in Dr. Gerold's own treatment records, and inconsistency with the other

objective medical evidence of record. (Dkt. 10-2, PgID 59-60).

Specifically, after being prescribed Celexa for depression in early 2012,

plaintiff had no mental health complaints for either Dr. Gerold, or his Bay Primary

Care predecessor, Dr. Bazzi. (Dkt. 10-2, PgID 59; Dkt. 10-7, PgID 328, 363-364,

366, 379, 386). The ALJ also notes that plaintiff's mental status examinations of

record do not reflect significant deficits in her ability to sustain the concentration

required for unskilled work activity. *Id.*

Additionally, the ALJ points out that Dr. Gerold's own treatment records do

not note a positive straight leg raising test, limited range of motion or abnormal

gait/stance during his physical examinations of plaintiff. (Dkt. 10-2, PgID 60;

27

Dkt. 10-8, PgID 379-380, 386-387).  As noted by the ALJ in her decision, during other physical examinations, plaintiff demonstrated full strength, normal gait, negative straight leg raising tests, intact reflexes, and full or mildly limited range of motion.  (Dkt. 10-2, PgID 58; Dkt. 10-7, PgID 332, 364, 367, 373, Dkt. 10-8, PgID 404-405, 416-417, Dkt. 10-9, PgID 445).  The ALJ also determined that plaintiff's treatment notes do not include more than occasional findings of extremity swelling.  (Dkt. 10-2, PgID 60; Dkt. 10-7, PgID 364, 367).

This objective medical evidence from plaintiff's treating physicians cited by the ALJ is inconsistent with Dr. Gerold's opinions that plaintiff's mental impairments affect her functional limitations and continuously limit her ability to deal with ordinary work stress.  The objective medical evidence is also inconsistent with his opinions that plaintiff's physical impairments require her to lie down at unpredictable intervals, to elevate her legs for 20 minutes every three hours, never bend at the waist and miss work more than three times per month.  (Dkt., 10-2, PgID 60; Dkt. 10-8, PgID 425-426).

Moreover, as cited by the ALJ, these same reasons demonstrating the lack of  supportability and inconsistency with the record as a whole, combined with the dearth of explanatory support, Dr. Gerold's very limited treatment relationship with plaintiff and his lack of specialization justify affording Dr. Gerold's opinions

28

not just less than controlling, but little or no weight under the 20 CFR §1527(c)(2) analysis. *See Allen,* 2013 WL 5676254, at *13.

Accordingly, the undersigned finds that the reasons for discounting the weight given to Dr. Gerold's opinions, as articulated by the ALJ in her decision, are supported by the evidence in the case record and are sufficiently specific to make clear the weight the ALJ gave to those opinions and the reasons for that weight. *See Gayheart*, 710 F.3d at 376.

## 2.   VE Hypothetical/RFC Assessment

In the view of the undersigned, the ALJ's RFC assessment and the related hypothetical posed to the VE accurately portray plaintiff's mental and physical impairments and thus provide substantial evidence to support the ALJ's non-disability finding .

> In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments.

*Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). The rule that a hypothetical question must accurately portray all of claimant's physical and mental limitations does not divest the ALJ of her obligation to assess credibility and determine the facts. *Griffeth v. Comm'r of Soc. Sec.,* 217 Fed.App'x 425, 429 (6th

29

Cir. 2007)(citing *Redfield v. Comm'r of Soc. Sec.*, 366 F.Supp.2d 489, 497

(E.D.Mich.2005)).  In fashioning a hypothetical question to be posed to a

vocational expert, the ALJ is required to incorporate only those limitations that she

accepts as credible. *Id* (citing *Casey v. Sec'y of HHS,* 987 F.2d 1230, 1235 (6th

Cir.1993)). An ALJ is not required to accept a claimant's subjective complaints,

and can present a hypothetical to the VE on the basis of her own reasonable

assessment of the testimony and other evidence. *Id* (citing *Jones v. Comm'r of*

*Soc. Sec.,* 336 F.3d 469, 476 (6th Cir.2003)).

   Additionally, the RFC describes "the claimant's residual abilities or what a

claimant can do, not what maladies a claimant suffers from—though the maladies

will certainly inform the ALJ's conclusion about the claimant's abilities." *Griffeth*,

217 Fed.App'x at 429 (quoting *Howard v. Comm'r of Soc.Sec.*, 276 F.3d 235, 240

(6th Cir. 2002)). "'A claimant's severe impairment may or may not affect his or her

functional capacity to do work. One does not necessarily establish the other.'" *Id*

(quoting *Yang v. Comm'r of Soc. Sec.,* 2004 WL 1765480, at *5 (E.D.Mich. July

14, 2004)).  Not all impairments deemed "severe" in step two must be included in

the hypothetical or RFC.  *See id* (distinguishing *Howard*, 276 F.3d at 240).

   Plaintiff argues that the RFC and the hypothetical posed to the VE do not

accurately portray plaintiff's impairments because they do not address her serious

30

impairments of migraine headaches and venous insufficiency. Although plaintiff clearly suffers from these maladies, they do not result in functional limitations to be addressed in the RFC and hypothetical. *See Griffeth*, 217 Fed.App'x at 429. The ALJ's decision reflects that the ALJ considered these ailments and determined that they did not significantly impact her ability to do unskilled work. (Dkt. 10-2, PgID 59).

"The medical evidence of record does not substantiate the claimant's testimony regarding the frequency and severity of her alleged migraine headaches" and "does not support a determination that [they] would prevent her from sustaining unskilled work activity." *Id*. Moreover, even Dr. Gerold's unsupported opinions regarding plaintiff's limitations contained no limitation regarding migraine headaches, and in fact, excluded mention of migraine headaches entirely. (Dkt. 10-8, PgID 425-426).

The ALJ noted that plaintiff has been diagnosed with venous insufficiency and prescribed compression stockings, but determined that because her treatment notes generally find no extremity swelling, no further restrictions other than those provided in the RFC were necessary. (Dkt. 10-2, PgID 54-55, 60). Dr. Gerold's Medical Source Statement also omits venous insufficiency on its list of relevant diagnoses, and the box indicating swelling of extremities is not marked. (Dkt. 10-

31

8, PgID 425).  Notwithstanding its omission from the MSS, to the extent that Dr. Gerold's opinions relate to her venous insufficiency, the ALJ properly disregarded those opinions as unsupported and inconsistent with the objective medical evidence of record. *See, supra*.

Plaintiff also argues that her RFC and the hypothetical posed the VE fail to accurately portray her impairments because they do not adequately address the symptoms of her carpel tunnel syndrome, depression and anxiety.

Plaintiff argues that her testimony regarding shooting pain in her forearms, numbness and tingling in her hands, her tendency to drop things and her increasing use of wrist splints demand a greater restriction for her use of her upper extremities.   Notwithstanding plaintiff's testimony, an ALJ is not required to accept a claimant's subjective complaints, and can present a hypothetical to the VE on the basis of her own reasonable assessment of the testimony and other evidence. *See Griffeth*, 217 Fed.App'x at 429. The ALJ found that plaintiff's mild carpel tunnel syndrom could reasonably limit her to frequent, but not constant, use of her bilateral upper extremities.  (Dkt. 10-2, PgID 58).  She determined that her condition was mild, requiring only wrist splints as treatment, and that her diagnostic criteria could not be replicated on physical examination by her primary care physician.  *Id*.  Notably, Dr. Gerold's Medical Source Statement is also

32

devoid of mention of plaintiff's carpel tunnel syndrome and contains no manipulative limitations. (Dkt. 10-8, PgID 425-426). Accordingly, the ALJ concluded that limiting plaintiff to frequent, but not constant, use of her upper extremities appropriately accommodated her serious impairment of mild carpel tunnel syndrome. (Dkt. 10-2, PgID 58).

The ALJ decided that the medical evidence of record, specifically the cessation of mental health complaints to her treating primary care physicians after plaintiff was prescribed Celexa and normal mental status examinations, did not support a determination that plaintiff's depression and anxiety prevented her from sustaining unskilled work. (Dkt. 10-2, PgID 59). As discussed by the ALJ in her decision, the RFC specifically limits plaintiff to unskilled work to avoid a high stress work environment and complex tasks that she felt would be difficult for plaintiff, given her mental and physical impairments. *Id.*

As noted by the Commissioner in its brief, the mental demands of unskilled work are as follows: the abilities to understand, carry out and remember simple instructions, to respond appropriately to supervision, co-workers, and usual work situations, and to deal with changes in the routine work setting. SSR 85-15, 1985 WL 56857 at *4. Nothing in the plaintiff's medical record suggests that her depression and anxiety limit her abilities to understand, carry out and remember

33

simple instructions, to respond appropriately to supervision, co-workers, usual

work situations and changes in the routine work setting.  In fact, state agency

consultant Joe DeLoach, Ph.D. noted in the MFRC he completed on plaintiff that

her understanding and memory were adequate to complete simple tasks, that her

social functioning was not impaired and that her adaptation is sufficient for the

competitive work environment.  (Dkt. 10-3, PgID 103).  Accordingly, the ALJ

appropriately addressed the functional limitations imposed by plaintiff's

depression and anxiety in the RFC and related hypothetical.

Plaintiff more specifically argues that the RFC's limitation to unskilled

work does not adequately address plaintiff's moderate difficulties with

concentration, persistence and pace.

As noted by another court in this District,

[t]here are cases ordering remand where an ALJ's hypothetical does not
include a specific reference to moderate limitations in concentration or pace
and only limits the hypothetical to unskilled work or simple, routine
tasks–but also other cases that have found that an ALJ formed an accurate
hypothetical by limiting the claimant to unskilled work and omitting a
moderate concentration or pace limitation.

*Roberts v. Comm'r of Soc. Sec.*, 2011 WL 4407221 at *8 (E.D. Mich., Aug. 8,

2011)(internal citations omitted).

Although the *Roberts* court acknowledged "that a hypothetical simply

limiting a claimant to unskilled work may, in some instances, fail to capture a

claimant's moderate limitation in concentration, persistence and pace...," it

determined that "there is no bright-line rule requiring remand whenever an ALJ's

hypothetical includes a limitation of simple, routine...work, but excludes a

moderate limitation in concentration." *Id.* Indeed, the Sixth Circuit has rejected

"the notion that a hypothetical must contain talismanic language," instead

determining that a hypothetical question is sufficient if it encompasses Plaintiff's

relevant limitations. *Street v. Comm'r of Soc. Sec.*, 390 F.Supp.2d 630, 638 (E.D.

Mich 2005)(citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir 2001)).

Accordingly, a court "**must look at the record as a whole and determine if**

**substantial evidence supports the ALJ's decision.**" *Roberts,* 2011 WL 4407221

at *8(emphasis added)(citing *Davis v. Apfel*, 133 F.Supp.2d 542, 547 (E.D. Mich

2001), *Hess v. Comm'r of Soc. Sec.*, 2008 WL 2478325, at *7 (E.D. Mich. June

16, 2008), *Lewicki v. Comm'r of Soc. Sec.*, 2010 WL 3905375, at *3 (E.D. Mich.

Sept. 30, 2010); *Marini v. Comm'r of Soc. Sec.*, 2014 WL 1230034, at *5 (E.D.

Mich. March 25, 2014).

The finding of a moderate limitation in concentration, persistence, or pace

must be considered in conjunction with the medical experts' conclusions, and

other evidence, that suggests Plaintiff could successfully perform occupational

tasks. *Roberts*, 2011 WL 4407221 at *8. In this case, the medical opinion

evidence supports the ALJ's hypothetical limitation for unskilled work. As noted

above, Dr. DeLoach concluded in the MFRC he completed on plaintiff that her

understanding and memory were adequate to complete simple tasks, that her social

functioning was not impaired and that her adaptation is sufficient for the

competitive work environment. (Dkt. 10-3, PgID 103). As discussed above, the

ALJ properly disregarded Dr. Gerold's unsupported opinion that plaintiff was

continuously limited in her ability to deal with ordinary work stress.

     In addition, plaintiff's described daily activities demonstrate sufficient

concentration to do unskilled work. Plaintiff testified that she was able to do

laundry, cook, watch television, use a computer, drive a car, grocery shop, crochet,

and read. (Dkt. 10-2, PgID 75-77). That plaintiff could concentrate sufficiently to

crochet, cook and read is further evidence that the restrictions set forth in the

ALJ's hypothetical fully encompassed plaintiff's concentrational limitations. *See*

*e.g., Marini,* 2014 WL 1230034 at *18(driving, preparing simple meals, playing

video games and watching television demonstrate concentration adequate for

performing one and two step tasks on a sustained basis); *see also LaTarte v.*

*Comm'r of Soc. Sec.*, 2009 WL 1044836 at *3 (E.D. Mich. April 20,

2009)(Plaintiff's ability to concentrate enough to watch television, read to her

children, drive and attend school functions belied the need for more specific concentrational limitations).

Finally, plaintiff has not explained why more detailed or specific limitations were required in order to account for her deficiencies in concentration, persistence and pace, nor has she suggested what those additional limitations should be. Without any explanation as to why the ALJ's restriction for "unskilled work" does not account for plaintiff's concentration, persistence or pace impairment, the undersigned must conclude that the restriction for unskilled work contained within the ALJ's hypothetical adequately addresses plaintiff's concentrational deficiencies. *See Marini*, 2014 WL 1230034 at *18; *see also, Lewicki*, 2010 WL 3905375, at *3.

Given the medical opinion evidence supporting plaintiff's ability to perform simple tasks, the concentration exhibited by plaintiff in her activities of daily living and the absence of any explanation as to why more detailed or specific limitations are necessary to account for plaintiff's impairments, the undersigned determines substantial evidence supports the ALJ's hypothetical and RFC.

For all these reasons, after review of the record, the undersigned suggests that the VE's testimony, based upon that hypothetical, the RFC and the ALJ's

determination that plaintiff is not disabled are supported by substantial evidence. The decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health*

*and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: March 11, 2015                    s/Michael Hluchaniuk
                                        Michael Hluchaniuk
                                        United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on <u>March 11, 2015</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to <u>all counsel of record.</u>

<u>s/Tammy Hallwood</u>

Case Manager

(810) 341-7887

tammy_hallwood@mied.uscourts.gov