UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEANANN M. VERMEESCH,

        Plaintiff,                            Case No. 14-cv-10619

v.                                   HONORABLE STEPHEN J. MURPHY, III

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

**ORDER OVERRULING OBJECTIONS**
(document no.20)**, ADOPTING REPORT AND
RECOMMENDATION** (document no. 19)**, DENYING VERMEESCH'S
MOTION TO REMAND** (document no. 14)**, GRANTING COMMISSIONER'S
MOTION FOR SUMMARY JUDGMENT** (document no. 16)**, AND DISMISSING CASE**

Jeanann Vermeesch applied for Social Security Disability Insurance Benefits ("DIB")
and Supplemental Security Income ("SSI"). The Social Security Administration ("SSA")
denied her application in an opinion issued by an Administrative Law Judge. After the
Appeals Council declined to review her claim, she appealed the decision to this Court under
42 U.S.C. § 405(g). District Judge Lawrence Zatkoff referred the matter to a United States
Magistrate Judge.[1] Vermeesch filed a motion to remand, and the Commissioner filed for
summary judgment. ECF Nos. 14, 16. On March 11, 2015, the magistrate judge issued a
Report and Recommendation ("Report"), advising the Court deny Vermeesch's motion,
grant the Commissioner's motion, and dismiss the case. Report, ECF No. 19. Vermeesch
filed timely objections. ECF No. 20.

**BACKGROUND**

_____

[1] Pursuant to Administrative Order 15-AO-015, the instant matter was reassigned to
District Judge Stephen J. Murphy on February 12, 2015.

Vermeesch was forty-five years old when the ALJ denied benefits. Tr. 135. She had previously worked as a data entry clerk and a secretary, and had performed housecleaning work until 2011. Tr. 39–40. Vermeesch stopped working due to symptoms from fibromyalgia, venous insufficiency, arthritis, migraines, non-alcoholic fatty liver disease, apnea, back problems, irritable bowel syndrome, depression, anxiety, stress, and allergies. Tr. 159. She indicated her disabling conditions include an inability to sit or stand for lengthy periods, fatigue, daily pain, and trouble sleeping. Tr. 185.

The ALJ found Vermeesch not disabled within the meaning of the Social Security regulations. Initially, she determined Vermeesch had not engaged in substantial gainful employment since May of 2011, the alleged disability onset date. Tr. 18. Next, the ALJ stated Vermeesch had several severe impairments affecting her ability to work, though none of her ailments met or equaled a listed impairment under the regulations.

The ALJ then determined Vermeesch had the residual functional capacity ("RFC") to perform light work, except she can sit, stand, or walk for up to six hours in an eight-hour day; "lift up to eight pounds; occasionally climb, crouch, crawl, stoop and kneel; frequently, but not constantly, use her bilateral upper extremities; [but] she is limited to unskilled work activity; and she must avoid exposure to occupational hazards, such as moving machinery, unprotected heights, and commercial driving." Tr. 22. Based on Vermeesch's RFC, she could not perform her prior relevant work. She could, however, work as a hostess, information clerk, or inspector. Given that those jobs existed in sufficient numbers in Michigan, the ALJ found Vermeesch not disabled. Tr. 30.

**STANDARD OF REVIEW**

2

A claimant may appeal a Social Security Administration decision to a United states district court. 42 U.S.C. § 405(g). The district court's review, however, "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Gayhart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted). The court employs a deferential level of review, and "will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion." *Id.* (citations omitted). Nonetheless, an "ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based on the record." *Id.* (citations omitted).

## DISCUSSION

Vermeesch raises five objections to the Commissioner's denial of her SSI and DIB petition, and challenges the weight given a treating physician opinion, the adequacy of the RFC assessment, and the accuracy of posed hypothetical questions.

I.   <u>Treating Source Opinion</u>

Vermeesch objects to the ALJ's assignment of little or no weight to the opinion of treating physician Dr. Mark Gerold. According to Vermeesch, the ALJ erred in finding Gerold's opinion inconsistent with his own treatment notes and the objective medical record. Vermeesch claims Gerold's findings are supported by his own observations of her leg swelling, his notation of a positive straight leg test, his prescription of drugs for

migraines, and the records of her neurologist, Dr. David Udehn. Pl. Mot. Summ. J. 3, ECF No. 20.

Treating source opinions must be given "controlling weight" if "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in the case record." 20 C.F.R. § 404.1527(c)(2); *see Gayheart*, 710 F.3d at 376. If controlling weight is not given, the ALJ then considers relevant factors such as the "length, frequency, nature, and extent of the treatment relationship," "the treating source's area of speciality," and the opinion's evidentiary support and consistency with the record as a whole. *See* 20 C.F.R. § 404.1527(c)(2)–(6); *Gayheart*, 710 F.3d at 376. In discounting the weight given a treating-source opinion, the ALJ is required to provide "good reasons," supported by evidence in the case record that is sufficiently specific "to make clear to any subsequent reviewers the weight [given] . . . and the reasons for that weight." *Gayheart*, 710 F.3d at 376.

The ALJ provided sufficiently specific reasons for discounting Gerold's opinion. Consistent with the requisite factors, the ALJ noted the unsupported nature of Gerold's opinion, the inconsistencies with his treatment notes, and the contradictions with objective medical evidence, particularly with Vermeesch's previous treating physician, Dr. Bilal Bazzi. Tr. 28–29. Moreover, the ALJ noted Vermeesch's brief treatment relationship with Gerold, and observed that although Vermeesch had been treated at Bay Primary Care since August of 2011, she had only been seeing Gerold for "approximately two months." Tr. 28.

Gerold's form medical source statement provided that Vermeesch "would be off-task, miss work regularly, need[] to lie down, cannot twist at the waist, and needs to elevate her legs throughout the day." Tr. 388–89. Merely checking the boxes of the form, Gerold failed

4

to offer a narrative in explanation of his medical opinion. And the ALJ noted several inconsistencies between the findings reported in the medical source statement and Gerold's own treatment notes and other objective medical evidence.

The ALJ found Gerold did not account for his opinion that Vermeesch would be extensively off-task or absent from work. Tr. 29. Despite being prescribed Celexa for depression in early 2012, the ALJ's review of Gerold's treatment notes found no complaints of or concerns related to anxiety or depression. Tr. 28. Indeed, Vermeesch reported no mental health complaints to either Gerold or his predecessor, Dr. Bazzi. Tr. 59, 328, 363–64, 366, 378, 379, 386. And the ALJ specified inconsistencies between Bazzi's treatment notes, Vermeesch's mental status examinations—which did not reflect significant defects in her ability to sustain concentration—and Gerold's objective findings. Tr. 24, 29, 263, 269, 281, 292, 327, 342, 349.

Furthermore, the ALJ noted Gerold had failed to indicate swelling of extremities on the medical source statement, Tr. 388, even as he reported Vermeesch's need to elevate her legs. His treatment notes did not account for Vermeesch having a positive straight leg raising test, limited range of motion, or abnormal gait/stance. Tr. 342–57. His medical report from July of 2012 did specify Vermeesch had leg swelling and venous insufficiency, but overall treatment notes included only occasional findings of extremity swelling. Tr. 60, 364, 367. And in other physical examinations, Vermeesch demonstrated full strength, normal gait, negative straight leg raising tests, intact flexes, and fully or mildly limited range of motion. Tr. 58, 332, 364, 404, 445.

Vermeesch maintains the prescription for migraines and the treatment notes of Dr. Udehn, which noted Gerold ordering an ultrasound for her leg swelling, qualify as objective

5

evidence supporting Gerold's finding. But an "ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (internal quotation marks and citations omitted). And contrary to Vermeesch's assertion, the ALJ offered an appropriate and sufficiently detailed explanation for discounting the weight given Gerold's opinion. The ALJ iterated the inconsistencies between Gerold's opinion and substantial portions of the case record, found Gerold's opinion was not supported by diagnostic techniques, and considered the length and extent of the treatment relationship between Vermeesch and Gerold. Accordingly, the ALJ offered the requisite good reasons for discounting his opinion.

Finally, Vermeesch's *Chenery*[2] claim and argument of post-hoc rationalization levied against the Report are unavailing. Vermeesch is correct to point out the government cannot provide after-the-fact rationalizations for an agency decision "that the agency had not relied on in its [disputed] decision." *Bazzi v. Colvin*, No. 14-11205, 2015 WL 1245894, at *28 (E.D. Mich. Mar. 18, 2015). But Vermeesch fails to identify any new arguments; instead, she merely points to evidence in the record. And the Court can consider "any evidence in the record, regardless of whether it has been cited by the ALJ." *Id.*

II.   <u>Substantial Evidence For RFC Assessment</u>

Vermeesch contends that the RFC determination inadequately accounts for the physical limitations posed by her migraine headaches, carpal tunnel syndrome, venous insufficiency, and mental restrictions. According to Vermeesch, the ALJ determined these

---

[2] *Sec. & Exch. Comm. v. Chenery Corp.*, 332 U.S. 194, 196 (1947), held that a reviewing court, in assessing the decision of an administrative agency, must judge its propriety solely by the grounds invoked by the agency.

limitations were "severe," but ignored evidence that supported including their limiting effects in the RFC.

At step two of the sequential analysis process, the regulations define a "severe" impairment as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The "significant" limitation standard is liberally construed in favor of the claimant. *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 428 (6th Cir. 2007). But the RFC not need reflect severe impairments if the record supports a finding that the limitations do not affect a claimant's functional capacity. *See id.* at 429. Severe impairments do "not necessarily establish" the RFC determination. *Yang v. Comm'r of Soc. Sec.*, No. 00-10446-BC, 2004 WL 1765480, at *7 (E.D. Mich. July 14, 2004).

The ALJ had substantial evidence in support of the RFC finding. Vermeesch suffered, in part, from migraine headaches, carpal tunnel syndrome, venuous insufficiency, and mental restrictions, that the ALJ listed as severe impairments. A review of the record, however, demonstrates the ALJ accounted for all of Vermeesch's medically discernible limitations in the RFC assessment.

While Vermeesch experienced migraine headaches and had prescriptions for her condition, medical evidence did not substantiate her testimony regarding the frequency and severity of her migraines. Contrary to hearing testimony that she suffers migraines four times a month, Vermeesch generally did not complain of migraines to treatment providers and reported having only two migraines in April of 2012. Tr. 342. And treatment notes indicated her migraines were associated with her Fentanyl use that physicians recommended she discontinue. Tr. 367. It is the claimant's burden to establish her RFC,

*see Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999), and Vermeesch cites only her testimony and medications as evidence of her allegedly disabling migraines. Mot. Remand 5, ECF No. 20.

Vermeesch also suffered from bilateral carpal tunnel syndrome. She testified to shooting pain in her forearms, numbness and tingling in her hands, her tendency to drop things, and her increasing use of wrist splints. Because of the carpal tunnel, the ALJ limited Vermeesch to frequent, but not constant, use of her bilateral upper extremities. The ALJ noted treating physicians classified her bilateral carpal tunnel syndrome as mild, prescribing only the use of wrist splints as treatment. *See Higgs v. Brown*, 880 F.3d 860, 863 (6th Cir. 1988) (stating mere diagnosis of an impairment does not establish the condition is disabling). In 2012, Vermeesch had positive Tinel's testing at the wrist bilaterally, Tr. 380, but later, Tinel's testing was negative, and she did not have hand numbness after fifteen seconds of Phalen's testing bilaterally. Tr. 342. Her neurologist noted normal coordination, motor function, and 5/5 grip strength in her upper extremities. Tr. 511. The ALJ accounted for the medical evidence presented and accordingly limited Vermeesch based on the substantiated level of impairment.

Likewise, Vermeesch experiences venous insufficiency. Medical records for May 2009 reflect the diagnosis, and indicate she was prescribed bilateral compression stockings. Tr. 32. She complained of right-sided swelling before her disability onset date, but said her stockings had worn out and she had not been using them. Tr. 263. Physical examinations revealed moderate sized superficial varicosity on her left knee and multiple other small varicosities on her lower extremities, but later treatment notes generally found no extremity swelling. A late 2012 physical examination showed her to have moderate crepitus of the

knees, but full range of motion, intact reflexes, and no extremity edema. Tr. 272–309. The ALJ cited physical examinations during which Vermeesch had full strength, walked with a normal gait, had negative straight leg raising testing, and intact reflexes. Tr. 296, 328. Accordingly, the ALJ limited Vermeesch to light work activity that involves standing, walking, and sitting for six hours in a workday. Tr. 27.

Finally, Vermeesch had identified mental impairments, including depression, anxiety, and difficulty with concentration, pace, and persistence ("CPP"). Records from May 2010 reflect a diagnosis of depression with anxiety, but note her condition as stable and report her doing better emotionally. Tr. 269. Her medical evidence showed prescriptions for depression, but treatment notes presented normal mental status examinations and a cessation of mental health complaints. During examinations, Vermeesch reported her prescription for Celexa was helping, and she had no mental health complaints in April or July of 2012. Physician notes described Vermeesch as pleasant, able to maintain good eye contact, alert, having linear and goal oriented thoughts, and appropriate. Tr. 20–21, 277–78. The ALJ acknowledged  Vermeesch's varying prescriptions for depression, but found nothing in Vermeesch's medical records to suggest her depression, anxiety, or CPP level circumscribed her capacity for unskilled work. Tr. 23; *see* Soc. Sec. R. 85-15; *Swadling v. Astrue*, No. 11-10421, 2012 WL 3030154, at *6 (E.D. Mich. June 26, 2012) (explaining an RFC for "unskilled work" sufficiently accounted for moderate CPP limitations).

Vermeesch testified she did not receive mental health treatment, and she could do laundry, cook, watch television, use a computer, drive a car, grocery shop, crochet, and read. Tr. 20, 75–77; *see Marini v. Comm's of Soc. Sec.*, No. 13-10067, 2014 WL 1230034,

9

at *18 (E.D. Mich. Mar. 25, 2014) (finding such activities demonstrative of the concentration needed for performing one and two step tasks on a sustained basis). A state agency consultant, Dr. Joe DeLoach, noted Vermeesch had adequate understanding and memory for simple tasks, unimpaired social functioning, and sufficient adaptation for a competitive work environment. Tr. 103. The RFC restriction to unskilled work adequately accounted for Vermeesch's impairments of depression, anxiety, and moderate CPP limitations. *See Zizzo v. Comm'r of Soc. Sec*, No. 12-14042, 2013 WL 5291663, at *6 (E.D. Mich. Sept. 19, 2013).

Vermeesch challenges the Report's reliance on DeLoach's conclusions given that his consultation was not directly cited by the ALJ in determining the mental limitations in the RFC. Mot. Remand 8, ECF No. 20. But judicial review of the ALJ findings is based on the record as a whole, and "the district court may look to any evidence in the record." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

Overall, substantial evidence supports the ALJ's decision that although Vermeesch suffers from impairments, they do not result in functional limitations that mandate address in the RFC. The Court engages in a deferential review, which "presupposes that there is a zone of choice within which the decisionmakers can go either way." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (internal quotation marks and citation omitted). The ALJ's RFC determination lies within that zone, and must be upheld.

III.   Hypothetical

Vermeesch's final objection challenges the hypothetical given to the vocational expert. She contends the hypothetical failed to account for limitations related to her severe impairments of migraine headaches and venous insufficiency. But the basis of the contention is her attack of the RFC assessment, and its alleged failure to account for her

10

limitations. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

As discussed previously, the ALJ considered Vermeesch's ailments and determined the record did not substantiate the severity of her migraines and venous insufficiency. The ALJ then posed hypothetical questions consistent with the functional limitations addressed in the RFC. The rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of her obligation to assess credibility and determine facts. In fashioning the hypothetical questions posed to the vocational expert, the ALJ is "required to incorporate only those limitations accepted as credible by the finder of fact." *Casey*, 987 F.2d at 1235; *see Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (finding an ALJ can "present a hypothetical to the VE on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate"). Substantial evidence supports the ALJ's finding of the functional limitations posed by Vermeesch's migraines and venous insufficiency, and it supports the hypothetical questions posed to the vocational expert.

### ORDER

**WHEREFORE**, it is hereby **ORDERED** that Vermeesch's Objections (document no. 20) are **OVERRULED**, and the Report and Recommendation (document no. 19) is **ADOPTED**.

**IT IS FURTHER ORDERED** that Vermeesch's Motion to Remand (document no. 14) is **DENIED**.

**IT IS FURTHER ORDERED** that the Commissioner's Motion for Summary Judgment (document no. 16) is **GRANTED**, and the case is **DISMISSED WITH PREJUDICE**.

11

**SO ORDERED**.


                              s/Stephen J. Murphy, III
                              STEPHEN J. MURPHY, III
                              United States District Judge
Dated: March 31, 2015

I hereby certify that a copy of the foregoing document was served upon the parties and/or
counsel of record on March 31, 2015, by electronic and/or ordinary mail.

                              s/Carol Cohron
                              Case Manager